GIOVANNI VIRGILIO *vs.* UNITED STATES RUBBER COMPANY.

DECEMBER 31, 1956.

PRESENT: Flynn, C. J., Condon, Roberts, Andrews and Paolino, JJ.

ANDREWS, J. This is a workmen's compensation case. It is before us on the appeal of the petitioner from the approval by the workmen's compensation commission of certain agreements and from their denial of his petition to hold the respondent in contempt for failure to continue payments under a preliminary agreement.

On March 7, 1943 petitioner suffered an injury to his right arm in the course of his employment with respondent. On April 9 the parties entered into a preliminary agreement under the workmen's compensation act, general laws 1938, chapter 300, hereinafter called the act, by which petitioner was to receive $20 a week for total incapacity based on an average weekly wage of $40.31. This agreement was approved by the director of labor, hereinafter called the director, on May 6, 1943. On December 15, 1943 petitioner returned to work for respondent and signed a settlement receipt. He soon earned as much as or more than said weekly wage and continued to be so employed until this case was heard.

In the latter part of 1953 petitioner's then counsel notified respondent that no settlement receipt pertaining to said preliminary agreement had been filed. Thereupon respondent searched its records and discovered a supplemental agreement dated January 19, 1944 covering partial compensation

after petitioner returned to work December 15, 1943 and a so-called settlement receipt dated January 17, 1944 covering total and partial incapacity payments made to petitioner up to that date. These were submitted to the director for his approval. Counsel for petitioner requested a hearing by the director. The hearing was held on February 8, 1954. The petitioner offered no evidence. However, his counsel stated he realized that our decision in *Capobianco* v. *United Wire & Supply Corp.*, 77 R. I. 474, denied him an appeal from the approval of the agreements but that in accordance with the procedure approved in that case he intended to file a petition alleging constructive fraud in relation to said agreements. No such petition has been filed.

On February 18, 1954 a decision was filed in which the director found that the agreements were validly executed and complied in all particulars with the act and he approved them. Notwithstanding his position as above stated, petitioner's then counsel appealed from such decision to the superior court. That appeal failed to contain any allegation of fraud or coercion and because of such failure respondent moved in that court to dismiss the appeal. Thereafter petitioner filed a petition to adjudge respondent in contempt for not having continued the payments under the preliminary agreement. None of these matters was heard by the superior court before the revision of the act became effective. Public laws 1954, chap. 3297.

Consequently the case was transferred to the workmen's compensation commission where a single commissioner heard and denied respondent's motion to dismiss petitioner's appeal, denied the employee's petition to adjudge respondent in contempt, and approved the agreements. He also specifically found that the agreements conformed to the provisions of the act and that there was no fraud, coercion or mistake of fact in their execution. The respondent did not appeal from the denial of its motion to dismiss the appeal but petitioner appealed to the full commission from

the rulings adverse to him. After a hearing the full commission affirmed the decree of the single commissioner and petitioner has appealed therefrom to this court.

The respondent first contends that we should not consider the appeal because the reasons of appeal are not directed to the decree of the full commission but to the decree of the single commissioner. The language of the appeal lends some color to this claim but read as a whole it is clear that the reasons are directed to the decree of the full commission.

The substance of the respondent's next contention is that since there is no appeal from the approval of an agreement by the director this appeal from his decision must be treated as one from the denial of a petition to set aside the agreements on the ground of fraud or coercion. This contention finds some support in the fact that the commission assumed jurisdiction to find and did find that there was no fraud, coercion or mistake of fact in the execution of the agreements and from the further fact that petitioner appealed from that finding not because the commission did not have jurisdiction to make it but because, as he says, the commission erred in finding that there was no such fraud, coercion or mistake of fact. The respondent's contention, however, must be rejected. Its motion to dismiss the appeal was denied. In the circumstances we must take the view that this ruling rejected its claim that there was no appeal from the approval and asserted the right of the commission to approve or disapprove the agreements. The failure of the respondent to appeal from that ruling made it the law of the case. *Newport Country Club* v. *Sullivan*, R. I., 146 Atl. 405. However, this ruling goes only to that part of the case which involved the director's approval of the agreements.

We now turn to the merits of the appeal before us. Except in a few instances the petitioner has treated his reasons of appeal under five issues without directing his argument

to each specific reason. Accordingly we shall treat the reasons of appeal substantially in the same manner.

The petitioner makes many claims that the agreements do not conform to the provisions of the act but in no instance does he point out the provision or provisions he says were not complied with. We find no merit in any of these contentions. The petitioner states that he was not paid proper compensation for the first week in which he returned to work on Wednesday, December 15, 1943. That workweek began Monday, so for the first two days thereof he was entitled to and was paid for total incapacity and that payment is admitted. For that workweek he received $19.52 in wages, $6.67 for total compensation for the first two days and $4.41 for partial compensation covering the last four days. The latter figure in fact represents 60 per cent of the difference between his earned wages and what he would have received based on his average weekly wage of $40.31.

The settlement receipt on its face states that petitioner returned to work on December 15, 1946. The petitioner endeavors to make much of this. In his testimony before the single commissioner he said he returned to work on December 15, 1943 and the schedule of payments *on the back* of this receipt shows he returned to work on December 15, 1943. The petitioner's mark on the receipt is not witnessed. He claims that this is another instance of noncompliance with the act, but he admits that an agreement may be so signed and here again fails to point out any provision in the act requiring a witness. The petitioner could sign his name, but because the injury was to his right arm he was unable to do so.

The commissioner found that on January 19, 1944 petitioner was *physically* disabled. The petitioner argues that this fact prevented the approval of the agreements. We have consistently held that an employee is entitled to compensation only for loss of earning capacity and not for mere physical disability that does not incapacitate him. See

*Ucci* v. *Hathaway Bakeries, Inc.*, 75 R. I. 341, 347. The petitioner even claims that the approval of the settlement receipt bars him from obtaining incapacity payments subsequent to the execution of the receipt. The receipt can be reviewed at any time within 800 weeks from March 7, 1943, the date of the injury.

One of petitioner's specific attacks is upon the finding that the settlement receipt was in fact executed on January 19, 1944 rather than on January 17, 1944, the date it bears. We find no evidence that the receipt was actually executed on January 19 rather than on January 17, 1944. However, we are of the opinion that the agreements were part of the same transaction and were executed on or about those dates. The exact date is unimportant. The material facts are that petitioner actually executed the receipt and was paid all the compensation due him prior to its execution.

As the payments for partial incapacity were made before the agreement was signed, petitioner claims that the agreement was a mere afterthought. Payments are often made before agreements are signed so that the employee may have something to live on pending settlement of the terms of the formal agreement. As it read before the revision of 1954, the act provided for the allowance of credit for such payments, G. L. 1938, chap. 300, art. II, §26.

The petitioner claims that respondent is estopped from relying upon the settlement receipt because after its execution medical treatment for his injury was provided, thus leading him to believe that the preliminary agreement was still outstanding. The respondent was bound to continue the medical payments within the limits fixed by the act, since the receipt only terminated incapacity payments. The making of these required payments was not a representation that the preliminary agreement was outstanding or one that led petitioner to change his position. But his signing of the settlement receipt, which later was actually approved, and the fact that he then worked and took full pay for

practically all of ten years without repudiating the receipt or making any contrary claim can be said to estop petitioner from now asking for full compensation in addition to full pay. We cannot agree with petitioner's concept of estoppel.

The petitioner takes the position that respondent was seeking "affirmative relief" in offering the agreements for approval and that such being the case it should have paid full compensation to date. If respondent can be said to have been asking for affirmative relief it was the relief that, by signing the receipt, petitioner authorized respondent to seek. The petitioner relies upon a long line of cases beginning with *Carpenter* v. *Globe Indemnity Co.*, 65 R. I. 194. None of the cases involved an approved settlement receipt. In those cases the employers took it upon themselves *unilaterally* to stop compensation. In the peculiar circumstances here such cases are not in point. The employee in the instant case agreed in writing not only to the suspension but that agreement eventually received approval. The settlement receipt is headed in bold type "Read Carefully Before Signing. Signing This Agreement Means That Compensation Payments Stop." To require respondent to bring the payments up to date would be to nullify this provision and defeat the expressed intention of the parties. We know of no instances where the director or other approving authority has required the bringing of payments up to date as a condition precedent to approval of the agreement.

One of the main claims of petitioner is that the approval of the settlement receipt when given did not stop the payments under the preliminary agreement as of the time the receipt was executed. He cites no direct authority for this proposition, and we know of none. Much that we have said under the previous point applies with equal if not greater force to this point. Our reports show many instances of approval of agreements given some time after their execution. There is often a delay in submitting agreements for approval and in their actual approval. In the instant case

the preliminary agreement was not approved for several weeks after its execution. The act was passed in 1912 and this is the first case which has come to our attention where it has been claimed that the agreements when approved are not effective *as and when* made. We cannot see how the director could approve an agreement as of any other time. He does not make the agreement but simply determines whether in fact it was executed and whether its terms comply with the act.

The commission approved these agreements *nunc pro tunc* but the addition of the provision had no legal significance since the agreements when approved were effective as and when made. The petitioner relies upon statements of this court in dissimilar cases. In none of them were we dealing with this question, because none of them involved an approved agreement.

It would unduly prolong this opinion were we to examine the long line of cases upon which petitioner relies, since as we have stated they involved facts legally dissimilar to those in the instant case. He most strongly relies on our opinion in *American Textile Co*. v. *DeAngelo*, 83 R. I. 234, 115 A.2d 349. There the employer filed a petition to review the preliminary agreement under which the employee was receiving payments on the ground that employee's incapacity had ended. The superior court granted the petition but the employee appealed to this court. The employer stopped the payments and was held in contempt and very properly so because the appeal vacated the decree of the superior court, thus leaving the preliminary agreement in full force. As in the rest of the cases in this series there was no approved settlement receipt involved.

The next main contention of petitioner is that his appeal from the action of the director in approving the agreements left them legally unapproved and hence respondent was in arrears in payments and should have been adjudged in contempt. Assuming without deciding that the appeal did have

that effect, this contention ignores the fact that the agreements when approved by the commission became effective as and when made. Therefore as a consequence nothing was owed to petitioner when the commission came to decide the petition to adjudge respondent in contempt. Equity speaks as of the time of its decree.

There remains for consideration the reasons of appeal concerning the admission of certain testimony relative to an agreement between the parties dated May 29, 1945 covering another injury suffered by petitioner. In his decision the single commissioner noted that although petitioner had legal counsel nothing was said about the first injury. The petitioner claims there was no evidence that petitioner did have legal counsel. The agreement, which was not approved for several weeks after its date, bore the name of a well-known member of our bar. We find no reason to believe that the evidence as to this later injury prejudiced petitioner.

We have already noted that one of petitioner's reasons of appeal is that the commission committed error in finding that there was no fraud, coercion, or mistake of fact in the execution of the agreements. The petitioner did not mention that finding in his brief or argument. In any event, the evidence was all in support of the finding.

We have considered all the reasons of appeal which were not waived and are of the opinion that they are without merit.

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the workmen's compensation commission for further proceedings.

*Michaelson & Stanzler, Milton Stanzler,* for petitioner.

*Ambrose W. Carroll,* for respondent.